GEORGE W. DRAPER III, Judge.
I respectfully dissent from the order entered today denying John Middleton’s (“Middleton”) writ of habeas corpus on the merits.

Right to a Ford Hearing

I believe Middleton’s right to due process is being grossly violated by this Court’s order summarily denying him a right to a hearing pursuant to Ford v. Wainwright, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) and Panetti v. Quarterman, 551 U.S. 930, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007). Ford and Panetti set forth the standard for granting a stay of execution when a claim of incompetence has been asserted. While “[a]ll prisoners are at risk of deteriorations in their mental state,” the “Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane.” Ford, All U.S. at 409-10, 106 S.Ct. 2595; Panetti 551 U.S. at 943, 127 S.Ct. 2842. In Panetti, the Court determined that Justice Powell’s opinion in Ford, containing the narrowest holding, constituted “clearly established” law for what showing is required to stay an execution due to incompetence and the minimum standards a state must provide to a prisoner raising a Ford claim. Panetti, 551 U.S. at 949, 127 S.Ct. 2842. Justice Powell stated:
Once a prisoner seeking a stay of execution has made a ‘substantial threshold showing of insanity,’ the protection afforded by procedural due process includes a ‘fair hearing’ in accord with fundamental fairness_ This protection means a prisoner must be accorded an ‘opportunity to be heard ... though a constitutionally acceptable procedure may be far less formal than a trial.’
Id. (internal citations omitted).
Here, however, this Court has denied Middleton even a bare modicum of due process. Moreover, Middleton has raised serious allegations concerning the Department of Corrections’ obstruction to his access to records and individuals who could discuss his mental health at this critical time.[1] Middleton alleges that despite the DOC’s obstructionist policies, he has been able to make a substantial threshold showing that he is incompetent to be executed. This claim is one that could not be raised until an execution date was set, which did not occur until May 30, 2014. The federal district court did not authorize funds for Middleton to retain a psychiatrist to conduct a competency evaluation until after an execution date was set. The short time that has elapsed since the execution date was set and today is insufficient to conduct a thorough investigation into Middleton’s competency to be executed.
Despite the shortened period of time, Middleton has submitted several affidavits that satisfy the threshold showing required under Ford. Middleton included affidavits from other prison inmates who testified to Middleton’s increasingly bizarre behavior. Middleton’s defense counsel submitted her own affidavit outlining her observations of *88 Middleton’s current mental status and his belief that he will be exonerated and will return home to Iowa. Finally, Middleton’s counsel retained a psychiatrist, Dr. William Logan, to evaluate him since the time his execution date has been set and when funds were authorized for his services. Dr. Logan has rendered a preliminary opinion, which is due in large part to the absence of additional materials and input from DOC staff directly familiar with Middleton’s behavior. Although preliminary in nature, Dr. Logan’s observations are sufficient to meet the substantial threshold showing to entitle Middleton to a Ford hearing. Dr. Logan has determined Middleton exhibits symptoms of psychosis and that his mental state is characterized by:
[R]ambling, tangential speech; rapid switching to irrelevant topics; auditory hallucinations to which he responds, at times observed by others; suspiciousness and preoccupation with irrelevant minor details which hinders the efforts of his defense attorneys, a pervasive distrust of the legal system including the efforts of previous attorneys on his behalf; and delusional ideas generally per-secutory and grandiose in nature.
Dr. Logan further explains Middleton suffers from a cognitive disorder, panic disorder, depression, anxiety, and bipolar disorder. With respect to the pending execution, Middleton can “recite the reason it was imposed, he in fact believes his conviction was the result of a conspiracy which included his associates, law enforcement, the courts, prosecutors, and his defense attorneys.” Further, Middleton demonstrates little emotional reaction and “believes he will not die while incarcerated by will be cleared on the charges and return .to the community.” Dr. Logan concludes that Middleton “lacks a rational understanding of the reason for the execution and is therefore not competent to be executed due to a diagnosis of delusional disorder, a psychotic mental illness.”
The federal district court found that Middleton has made a substantial threshold showing of incompetence and should be afforded a hearing. I would find likewise under these facts.

Constitutionality of Section 552.060

Second, I believe Middleton has raised grave concerns regarding the constitutionality of section 552.060, RSMo 2000. Section 552.060 governs the procedure for determining whether a condemned prisoner is competent to be executed. Section 552.060.1 prohibits the execution of any prisoner who “lacks capacity to understand the nature and purpose of the punishment about to be imposed upon him or matters in extenuation, arguments for executive clemency or reasons why the sentence should not be carried out.” Section 552.060.2 provides that if the DOC director has “reasonable cause to believe” that a condemned prisoner has a mental disease or defect excluding fitness for execution, the director has a duty to notify the governor immediately, who must then issue a stay if there is insufficient time to conduct a mental evaluation prior to the execution date.[2]
After the director makes a finding and notifies the statutorily enumerated state authorities, the circuit court where the prisoner is incarcerated “shall conduct an inquiry into the mental condition of the offender” after pertinent mental examinations have been made. Section 552.060.3.
*89 If the circuit court determines the prisoner is competent, then a new execution date is set; if not, he or she is transferred to a mental hospital for treatment. Section 552.060.4. The statute further provides, “Nothing in this chapter shall be construed to limit the governor or any court in the exercise of any of their powers in any manner under the law or Constitution of Missouri.” Section 552.060.5.
I believe Middleton has raised a timely constitutional challenge to the validity of section 552.060, which should be addressed by this Court after appropriate briefing and oral argument. Middleton raises persuasive arguments alleging section 552.060 does not comport with the minimum due process dictates of Ford and Panetti First, Middleton points out the fundamental structural flaw in the statute is that only the DOC director has the capacity to initiate the process relating to a determination of the sanity of the condemned prisoner. A plain reading of the statute shows that it is incumbent upon the director to initiate the proceedings, if in his discretion, he determines there is “reasonable cause to believe” a prisoner has a mental disease or defect that renders the prisoner incompetent to be executed. In Ford, the Court criticized Florida’s statutory scheme which consolidated the decision of whether a prisoner is competent to the governor and other members of the executive branch. The Court stated, “In no ■ other circumstance of which we are aware is the vindication of a constitutional right entrusted to the unreviewable discretion of an administrative tribunal.” Ford, 477 U.S. at 416, 106 S.Ct. 2595. This Court has not addressed whether the statute cloaks the director with unfettered and unreviewable discretion, but a cursory reading of the statute places the characterization of the prisoner’s mental status solely in the hands of the director.[3] This serious issue requires review by this Court en banc to ensure Missouri does not commit the reprehensible and unconstitutional execution of an incompetent prisoner.
Therefore, I would issue the writ of habeas corpus and issue a stay of execution so that Middleton could have a Ford hearing to determine his competence to be executed.

. Since Missouri has resumed executing prisoners on a monthly basis, this Court has received several motions alleging continued and repeated lack of cooperation by the DOC that interferes with the inmates’ ability to make their cases for claims such as these. While there may be no constitutional interference, this Court cannot be certain without judicial inquiry into the matter.

. The director must also notify the director of the department of mental health, the prosecuting attorney of the county where the prisoner was tried, the circuit court where the prisoner is incarcerated, and the attorney general. Notably absent from this list is the prisoner’s defense counsel.

. I am also troubled by the allegation Middleton has raised that the State has now changed its position on whether section 552.060 or a writ of habeas corpus is the appropriate means to raise the competency issue. Middleton alleges the State has asserted previously that the statute was the appropriate means when answering the same claim raised by Joseph Franklin in November 2013.